**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

TERESA LAVIS,

                Plaintiff,

v.                                   CIVIL ACTION NO.   5:17-cv-00209

REVERSE MORTGAGE SOLUTIONS, LLC,

                Defendant.

**MEMORANDUM OPINION**

The Court has reviewed *Plaintiff Teresa Lavis' Memorandum on Remanded Questions* (Document 142), *Reverse Mortgage Solutions' Brief Addressing Questions Remanded by the Fourth Circuit Court of Appeals* (Document 145), *Plaintiff Teresa Lavis' Response Memorandum on Remanded Questions* (Document 148), *Reverse Mortgage Solutions' Brief in Response to Plaintiff Teresa Lavis' Memorandum on Remanded Questions* (Document 149), *Reverse Mortgage Solutions' Reply Brief Responding to Plaintiff's Response Memorandum on Remanded Questions* (Document 150), and *Plaintiff Teresa Lavis' Reply Memorandum on Remanded Questions* (Document 151), as well as all exhibits.

**PROCEDURAL HISTORY**

The Plaintiff, Teresa Lavis, obtained a reverse mortgage from Defendant Reverse Mortgage Solutions (RMS) in 2013.  She received a lump sum of $44,008.96. The total loan principal, including closing costs and payment of Ms. Lavis's prior traditional mortgage, was

1

$66,976.   Under the terms of the reverse mortgage, Ms. Lavis was responsible for property taxes and homeowner's insurance.   RMS expended funds related to taxes and insurance and billed Ms. Lavis, but she fell behind on payments.   RMS began threatening foreclosure, and Ms. Lavis sent a letter, dated May 12, 2016, notifying RMS that she was exercising her right to rescind the loan. RMS date stamped the letter May 17, 2016, but took no action in response.

Ms. Lavis initiated this suit, and a jury trial was held June 11 through June 13, 2018.   At the time of trial, her claims related to rescission, misrepresentation, and violation of the West Virginia Consumer Credit and Protection Act (WVCCPA).   The Court granted a motion for judgment as a matter of law regarding the rescission claim, finding that Ms. Lavis had the right to rescind and had taken the steps required by law to rescind the reverse mortgage.   The jury rendered a verdict finding that Ms. Lavis had not proven that RMS used fraudulent, deceptive, or misleading representations to collect a debt or that RMS had failed to honor rescission.   Following the trial, Ms. Lavis moved for judgment as a matter of law, and the Court granted the motion with respect to RMS's failure to honor rescission, finding that RMS had not complied with statutory requirements following Ms. Lavis's rescission notice.   The Court further found that RMS had ceded any right to require Ms. Lavis to tender the loan proceeds by failing to perform any of the procedures contemplated by the statute related to rescission and tender.[1]

During the course of appellate proceedings, RMS and its corporate holder filed a Chapter 11 bankruptcy petition.   The Fourth Circuit stayed the case.   When briefing resumed, Ms. Lavis raised questions regarding RMS's standing to seek relief, based in part on the bankruptcy proceedings.   The Fourth Circuit issued a limited remand order, directing this Court to resolve the

---

[1] Among other potential avenues for a lender to seek tender that it failed to pursue, RMS did not file a counterclaim, and thus did not plead facts related to standing or its entitlement to relief.

2

following questions, as well as any other arguments related to RMS's standing and ability to proceed in this litigation:

1) Whether RMS, SHAP 2018-1, LLC, Mortgage Assets Management, LLC, or some other party owns the rights to Ms. Lavis's mortgage?
2) If so, what is the extent of those rights?
3) What is RMS's corporate status after the bankruptcy proceedings?
4) What effect did the bankruptcy proceedings have on Ms. Lavis's mortgage, RMS, and the other potential parties-in-interest?

(Fourth Cir. Remand Order, Document 134.)

The parties have completed discovery and briefing, and the matter is ripe for adjudication.

**REMAND FINDINGS**

*A. Mortgage Ownership*

Following the bankruptcy proceedings, RMS was reorganized and became a wholly owned subsidiary of Mortgage Assets Management, LLC.   Its representative indicates that it continues to own and service reverse mortgages, including Ms. Lavis's reverse mortgage.   (Declaration of Gretchen McCord, Def.'s Ex. B, Document 145-2 at ¶ 6.)   Ms. Lavis's mortgage is securitized in a Ginnie Mae (Government National Mortgage Association) pool.   (Def.'s Ex. C, Document 145-3 at 16.)   RMS argues that it owns and services the mortgage, and Ginnie Mae's security interest is of little relevance.   Ms. Lavis argues that Ginnie Mae owns her reverse mortgage, and RMS lacks standing to seek tender of the loan proceeds.

The Master Custodial Agreement between RMS and Ginnie Mae states that "the Issuer [RMS] proposes to issue mortgage-backed securities guaranteed by the Government National Mortgage Associate…and these securities will be based on and backed by all pools and/or loan

packages of mortgages to be identified in the records of Ginnie Mae by the Issuer's ID number."

(Master Custodial Agreement, Pl.'s Ex. 3, Document 147-1 at 5.)   The Certification and

Agreement applicable to the pool of mortgages that includes Ms. Lavis's loan indicates:

> Any and all security agreements affecting the mortgages in the referenced pool or loan package are limited by a duly executed Release of Security Interest (form HUD – 11711A), which has been delivered by the issuer to the designated document custodian and which provides that any interest of a secured party in and to the pooled mortgages shall lapse upon or prior to the delivery of securities backed by the referenced pool or loan package. Upon the delivery of securities, only Ginnie Mae will have any ownership interest in and to the pooled mortgages.

(Certification and Agreement – 11711B, Def.'s Ex. C, Document 145-3 at 26).

The Federal Circuit described Ginnie Mae's function as follows: "Approved private lenders

originate or acquire residential mortgage loans insured or guaranteed by certain Government

agencies, pool and securitize those mortgages, and sell the securities to investors in the secondary

mortgage market.   Ginnie Mae guarantees the 'timely payment of principal and interest on those

securities' to investors."   *First Mortg. Corp. v. United States*, 961 F.3d 1331, 1334 (Fed. Cir.

2020) (internal citations to the record and punctuation omitted.)   In an opinion with an extensive

examination of Ginnie Mae's role, the Eastern District of Pennsylvania explained that "Ginnie

Mae guarantees the performance of the issuer rather than the underlying collateral, so it neither

buys loans nor issues its own securities.   In return for the guarantee, which makes the securities

more marketable to investors, the issuer pays a fee and gives Ginnie Mae a conditional interest in

the underlying mortgages."   *Hoffman v. Phelan Hallinan, LLP*, No. CV 13-5700, 2016 WL

4089163, at *4 (E.D. Pa. Aug. 2, 2016) (internal citations omitted) (explaining that the issuer

4

typically assigns equitable title to Ginnie Mae, while retaining legal title to the mortgage to facilitate servicing).

Thus, with regard to the first two questions posed by the Fourth Circuit, the Court finds that RMS and Ginnie Mae both own some interest in Ms. Lavis's reverse mortgage.   RMS issued the mortgage and possesses the servicing rights, while Ginnie Mae guarantees the pool of mortgage-backed securities that includes Ms. Lavis's loan.   This status was present throughout the pendency of the case, though its impact on RMS's ability to seek tender of the loan proceeds was not previously litigated.

*B.     Corporate Status and Bankruptcy Proceedings*

Ditech Holding Corporation and its debtor affiliates, including RMS, filed a voluntary petition for relief under Chapter 11 on February 11, 2019.   Mortgage Assets Management, LLC (MAM) purchased RMS.   RMS's representative states that "RMS emerged from bankruptcy as a reorganized entity and wholly owned subsidiary of Mortgage Assets Management, LLC." (Declaration of Gretchen McCord, Def.'s Ex. B, Document 145-2 at ¶ 6.)   When MAM purchased RMS's stock and assets, it contributed the assets, including the Ginnie Mae pool servicing rights, back to the reorganized RMS.

With respect to the final two questions for remand, the parties appear to agree that the bankruptcy ultimately had no impact on RMS's interest in Ms. Lavis's loan.   RMS has a different corporate parent but retains its corporate status.   It continues to service the loans in the Ginnie Mae pool that includes Ms. Lavis's reverse mortgage.

## CONCLUSION

Wherefore, after discovery and the parties' briefing, the Court **FINDS** as follows regarding the questions posed by the United States Court of Appeals for the Fourth Circuit, related to RMS's standing to pursue the appeal:

1. Whether RMS, SHAP 2018-1, LLC, Mortgage Assets Management, LLC, or some other party owns the rights to Ms. Lavis's mortgage?
   A. RMS owns the servicing rights to Ms. Lavis's mortgage.

2. If so, what is the extent of those rights?
   A. The loan is securitized in a Ginnie Mae pool used to guarantee mortgage-backed securities.

3. What is RMS's corporate status after the bankruptcy proceedings?
   A. RMS remains a corporation, now wholly owned by Mortgage Assets Management, LLC.

4. What effect did the bankruptcy proceedings have on Ms. Lavis's mortgage, RMS, and the other potential parties-in-interest?
   A. The bankruptcy proceedings had no impact on the status or ownership of Ms. Lavis's mortgage.

The Court **DIRECTS** the Clerk to send a copy of this Opinion to the Clerk for the United States Court of Appeals for the Fourth Circuit, to counsel of record, and to any unrepresented party.

ENTER:        June 4, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

6